1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10   LINDA HERNANDEZ,                   )   Case No. ED CV 08-1243 PJW
                                        )
11                  Plaintiff,          )
                                        )   MEMORANDUM OPINION AND ORDER
12            v.                        )
                                        )
13   MICHAEL J. ASTRUE,                 )
     Commissioner of the               )
14   Social Security Administration,    )
                                        )
15                  Defendant.          )
     _____)

16

17                            I. INTRODUCTION

18        Before the Court is Plaintiff's appeal of a decision by Defendant

19   Social Security Administration ("the Agency"), denying her application

20   for Disability Insurance Benefits ("DIB").  Plaintiff claims that the

21   Administrative Law Judge ("ALJ") erred when he failed to properly

22   consider the treating doctor's opinion regarding her limitations,

23   including the fact that she needed a cane to walk, and to include

24   those limitations in the hypothetical question to the vocational

25   expert.  (Joint Stip. at 3-5, 7-9, 13-18.)  She also argues that the

26   ALJ erred when he found that she was not credible.  (Joint Stip. at 9-

27   11.)  For the reasons discussed below, the Agency's decision is

28   REVERSED and the case is REMANDED for further proceedings.

## II. SUMMARY OF PROCEEDINGS

Plaintiff applied for DIB on April 28, 2004. (Administrative Record ("AR") 62.)  The Agency denied the claim initially and on reconsideration. (AR 34-40, 48-52.)  Plaintiff then requested and was granted a hearing before an ALJ. (AR 53-57.)  On July 20, 2006 and December 7, 2006, Plaintiff appeared with counsel and testified. (AR 416-72, 473-515.)  On March 2, 2007, the ALJ issued a decision denying Plaintiff's application. (AR 13-23.)  He found that Plaintiff was unable to perform her past work, but that she had the residual functional capacity to do other work existing in the national economy. (AR 22-23.)  After the Appeals Council denied review of the ALJ's decision, (AR 6-8), Plaintiff commenced the instant action.

## III. DISCUSSION

In her first claim of error, Plaintiff contends that the ALJ failed to properly consider treating physician Patricia McGhee's June 2006 residual functional capacity assessment. (Joint Stip. at 3-5.) For the following reasons, the Court agrees.

In her June 2006 assessment, Dr. McGhee opined that Plaintiff could lift or carry less than ten pounds occasionally, but could lift or carry ten pounds frequently;[1] could stand or walk for no more than two hours in an eight-hour workday; needed the assistance of a cane for stability; needed to alternate standing and sitting at least once every hour to relieve pain; and could only occasionally kneel, crouch, or crawl. (AR 396-97.)

At the July 20, 2006 hearing, the ALJ asked testifying medical expert Dr. Sami Nafoosi about Plaintiff's functional limitations. (AR

---

[1]  This inconsistency is addressed below.

2

433-34.)  Dr. Nafoosi opined that Plaintiff could "on occasion lift 20
pounds, [ten] pounds frequently.  She can sit for eight hours in an
eight hour day.  Stand or walk for four hours of an eight hour day
provided she's allowed to change positions briefly each hour."  (AR
434.)  The ALJ then asked Dr. Nafoosi about Dr. McGhee's June 2006
residual functional capacity assessment:

ALJ:    Okay, for lifting and carrying occasionally, as I said,
        [Dr. McGhee] indicated less than 10 pounds.  And then
        said increased pain in the feet.

ME:     Right, right, that's, that's where I got the impression
        that it was mostly with feet.

ALJ:    Okay.  And something lifting but I can't read the rest
        of it.  But then inconsistently [Dr. McGhee] has ten
        pounds which makes no sense.

ME:     Yeah, that's inconsistent.

ALJ:    Yeah, that wouldn't make any sense . . . Yeah, [Dr.
        McGhee] said [Plaintiff] could frequently lift ten but
        only occasionally could lift less than ten.  That
        doesn't make sense.  [She] apparently missed something
        there.  All right.  And then standing and walking [she]
        has less than two in an eight hour day and the medical
        findings is supporting the assessment.  [She] says pain
        with standing.

ME:     Have a cane for balance.

ALJ:    Right.

ME:     [INAUDIBLE], you know, I mean I limited her because of
        the problems with the knees . . . [¶] . . . and when
        you take into account the feet and, you know, she's

3

1    [INAUDIBLE] that objectively it seems like she's

2    considering the feet to be severe [INAUDIBLE].  And the

3    feet I see [INAUDIBLE] and it would be just a temporary

4    condition.

5 (AR 443-44.)  There was no further discussion of Dr. McGhee's opinion

6 at the hearing.

7      In his decision denying benefits, the ALJ recited Dr. McGhee's

8 June 2006 assessment, as well as assessments by a consultative

9 examiner in July 2004 and state agency reviewing doctors in August and

10 November 2004 that were less restrictive than Dr. McGhee's.  (AR 21.)

11 The ALJ also noted Dr. Nafoosi's testimony that Plaintiff would be

12 restricted to lifting ten pounds frequently and 20 pounds

13 occasionally, and to standing and walking for up to four hours in an

14 eight-hour workday, with the need to alternate sitting and standing

15 about once an hour.  (AR 21.)  The ALJ concluded that Dr. Nafoosi's

16 opinion "seems well-supported by the overall record and is therefore

17 credited with controlling weight."  (AR 21.)

18      It is well-established that, "[b]y rule, the Social Security

19 Administration favors the opinion of a treating physician over non-

20 treating physicians."  *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir.

21 2007); *see also Aukland v. Massanari*, 257 F.3d 1033, 1037 (9th Cir.

22 2001).  A treating physician's opinion as to the nature and severity

23 of an impairment must be given controlling weight if the opinion is

24 well supported and not inconsistent with other substantial evidence.

25 Social Security Ruling ("SSR") 96-2p; *Edlund v. Massanari*, 253 F.3d

26 1152, 1157 (9th Cir. 2001).

27      Even where a treating physician's opinion is not given

28 controlling weight because it is not well supported or because it is

4

inconsistent with other substantial evidence in the record, an ALJ must still consider various factors--including the length, nature, and extent of the treatment relationship; the amount of relevant evidence that supports the opinion; the consistency of the medical opinion with the record as a whole; and the speciality of the physician providing the opinion--in determining what weight to give it. *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527 and SSR 96-2p).  Where the treating physician's opinion is contradicted by a non-treating physician's opinion, the ALJ must provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting it. *Id*. at 632 (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996)).  Where, however, the non-treating physician is a consulting doctor who never examined the claimant and relied on the same clinical findings as the treating physician to arrive at the opposite conclusion as the treating physician, the consulting doctor's opinion does not amount to substantial evidence.  *Id*.

It is undisputed that Dr. McGhee was Plaintiff's treating physician.  (AR 76.)  Indeed, the record shows that Dr. McGhee had been treating Plaintiff from at least as early as October 2003.  (AR 324, 333.)  Having noted that the examining and reviewing physicians disagreed with Dr. McGhee about Plaintiff's functional limitations, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. McGhee's opinion.  He did not do so.  Rather, as set forth above, the ALJ appeared to simply defer to the contrary opinion of Dr. Nafoosi, the testifying medical consultant.  (AR 21.)  That was inadequate as a matter of law.

The Agency argues that the ALJ "reasonably adopted" Dr. Nafoosi's findings that there were "troubling inconsistencies" in Dr. McGhee's

1  report.  (Joint Stip. at 6.)  The Agency also argues that the ALJ made

2  other findings, e.g., that Plaintiff received only conservative

3  treatment and over-the-counter pain medication, that serve as

4  substantial evidence for rejecting Dr. McGhee's opinion.  (Joint Stip.

5  at 6-7.)  The Court rejects these arguments.

6      First, the ALJ did not state that he was relying on

7  inconsistencies in Dr. McGhee's report or Plaintiff's conservative

8  treatment as reasons for rejecting Dr. McGhee's opinion.  As such,

9  those reasons cannot be considered by the Court.[2]  *See Connett v.*

10 *Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (finding that it was error

11 "to affirm the ALJ's credibility decision based on evidence that the

12 ALJ did not discuss").

13     Second, Dr. Nafoosi did not examine Plaintiff or perform any

14 tests on her.  He merely reviewed Dr. McGhee's records (and those of

15 the other doctors) and offered an opinion that was different than Dr.

16 McGhee's.  Under these circumstances, Dr. Nafoosi's opinion does not

17 constitute substantial evidence to support the ALJ's rejection of Dr.

18 McGhee's opinion.[3]  *Orn*, 495 F.3d at 633.

19

---

20     [2]  In any case, the only inconsistency Dr. Nafoosi found in Dr.
   McGhee's report was that she found that Plaintiff could frequently
21 lift ten pounds, but only occasionally lift less than ten pounds.  (AR
   443-44.)  The ALJ should have resolved this discrepancy by contacting
22 Dr. McGhee for clarification, not used it as the basis for rejecting
   the opinion wholesale.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150
23 (9th Cir. 2001) (remanding for development of the record where medical
   expert found treating physician's records "confusing"); *see also* 20
24 C.F.R. § 404.1512(e).
25

26     [3]  The one specific reason the ALJ actually gave for adopting Dr.
   Nafoosi's functional assessment was that "Dr. Nafoosi emphasized that
27 the medical evidence of record does not reflect the muscle atrophy
   likely to accompany marked impairment in ambulation."  (AR 21.)  The
28                                                      (continued...)

In her second claim of error, Plaintiff contends that the ALJ erred by failing to properly consider Dr. McGhee's determination that she needed a cane.  (Joint Stip. at 8; AR 396.)  As explained below, though the Court agrees that the ALJ should have mentioned the cane and included it in his residual functional capacity finding, any error was harmless because it did not affect the ALJ's ultimate finding that Plaintiff could perform sedentary work.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that error by the ALJ is harmless where the mistake "was nonprejudical to the claimant or irrelevant to the ALJ's ultimate disability conclusion.").

The ALJ noted Plaintiff's testimony that she needed a cane for "any ambulation outdoors," as well as the assessment of Dr. Richard Woods that Plaintiff required a cane for "prolonged ambulation."  (AR 20, 21.)  More importantly, the ALJ developed the record with respect to Plaintiff's use of a cane at the second administrative hearing. First, he elicited testimony from Dr. Nafoosi that Plaintiff's use of a cane was consistent with the medical record.  (AR 492.)  Then, he asked Plaintiff how she would need to use a cane when navigating about an office.  Plaintiff testified that she would not need her cane to move around in her "little station," but that she would need it if she walked away from the front office.  (AR 493.)

In the hypothetical question to the vocational expert, the ALJ asked whether an individual who "would not be able to go down the hall or do any walking beyond just right around her workstation without the

---

[3]   (...continued)
record makes plain, however, that this comment was made during a discussion of Dr. David Wood's October 2004 functional assessment. (AR 229-30, 444-45.)

use of a cane" and who would have to steady herself with one hand while at her workstation could perform the jobs of information clerk, receptionist, or appointment clerk.[4]  (AR 489, 512.)  The vocational expert testified that that limitation "shouldn't have any impact at all because all three of those jobs are sedentary which would limit lifting to ten pounds."  (AR 512.)  The vocational expert opined that, even if Plaintiff was limited to lifting less than ten pounds, only the number of receptionist jobs would be reduced (by 50%), but the other jobs would not affected.  (AR 513-14.)  The ALJ relied on the vocational expert's testimony that Plaintiff could do these three jobs in concluding that Plaintiff could work.  (AR 22-23.)  Because the ALJ's reliance on the vocational expert's testimony plainly incorporated Plaintiff's use of a cane as she herself described it, any failure to specifically include that limitation in his residual functional capacity determination was irrelevant to the ultimate disability determination and, thus, harmless.

In her third claim of error, Plaintiff argues that the ALJ erred in finding her testimony incredible because he did not provide specific evidence to undermine that testimony.  (Joint Stip. at 9-11.)  The Court agrees.

ALJ's are tasked with judging the credibility of witnesses.  In making a credibility determination, an ALJ may take into account ordinary credibility evaluation techniques.  *Smolen*, 80 F.3d at 1284.  Where, as here, a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the

---

[4]  The ALJ added the limitation based on Plaintiff's cane use to a host of other limitations he had previously described in the first hypothetical question.  (AR 486-88, 495.)

1    symptoms alleged and there is no evidence of malingering, the ALJ can

2    only reject the claimant's testimony for specific, clear, and

3    convincing reasons.  *Id.* at 1283-84.  In addressing the ALJ's

4    credibility determination, the Court focuses on the reasons set forth

5    by the ALJ in his decision and determines whether these reasons are

6    sufficiently clear and convincing to support it.  *Connett*, 340 F.3d at

7    874 (holding it is error to affirm ALJ's credibility finding for

8    reasons the ALJ did not discuss).

9         Here, the ALJ noted that Plaintiff claimed to be "significantly

10   limited in her ability to ambulate due to problems with balance,

11   weakness in her knees, and other impairment in her lower extremities";

12   that she claimed to require the use of a cane; and that she testified

13   that she suffers from shortness of breath with exertion and that she

14   is unable to lift more than ten pounds.  (AR 20.)  He also noted that

15   Plaintiff claimed that she and her husband went out to eat every night

16   because she did not like to cook.  (AR 20.)

17        The ALJ rejected this testimony, finding:

18        [T]he record does not show that [Plaintiff] has consistently

19        required particularly strong medication for pain.  To the

20        contrary, in multiple statements, [Plaintiff] indicates that she

21        uses no pain medication except for aspirin and/or Celebrex.

22   (AR 20.)

23        The Court does not find this reason for rejecting Plaintiff's

24   testimony convincing.  Plaintiff did not testify that all of her

25   symptoms were related to disabling pain, and the ALJ failed to explain

26   how her limited use of pain medication undermined her testimony that

27   she had problems with balance, weakness, shortness of breath, and

28

1  carrying more than ten pounds.[5]  Because the ALJ did not make findings
2  "sufficiently specific to allow [this] court to conclude that [he]
3  rejected [Plaintiff]'s testimony on permissible grounds and did not
4  arbitrarily discredit [her] testimony," *Moisa v. Barnhart*, 367 F.3d
5  882, 885 (9th Cir. 2004), the matter must be remanded for further
6  consideration.[6]

7       In her fourth claim of error, Plaintiff contends that the ALJ
8  erred by failing to incorporate the functional limitations determined
9  by Dr. McGhee, as set forth above, in his hypothetical questions to
10  the vocational expert.  (Joint Stip. at 13-18.)  Because the Court has
11  determined that the ALJ must reconsider the treating doctor's opinion
12  and Plaintiff's credibility, this contention is moot.  In light of the
13  Court's conclusions above, however, the ALJ may need to reconsider
14  this issue on remand as well.

15
16
17
18
19
20
21

_____

22
23      [5]  Although it is possible that the ALJ incorporated some of
    these allegations in his residual functional capacity determination,
24  his decision is insufficiently clear on this point also, leaving it
    for the Court to try to decide which parts of Plaintiff's testimony
25  the ALJ accepted, and which parts he did not.

26      [6]  It can be argued that the ALJ also relied on conflicting
    medical evidence from Plaintiff's doctors to support his credibility
27  finding.  (AR 20.)  Even assuming that this were true, it would not be
    enough to reject her testimony.  The ALJ did not explain how this
28  evidence undermined her testimony.

IV.  CONCLUSION

For these reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

DATED: January  13, 2010

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\HERNANDEZ, L 1243\MemoOpinion.wpd

11